UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JIMMY RANDLE** | **CASE NO. 2:21-CV-00985** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **P N K  L L C DBA L'AUBERGE LAKE CHARLES CASINO RESORT** | **MAGISTRATE JUDGE DAVID J. AYO** |

**MEMORANDUM RULING**

Pending before the Court is a Motion for Summary Judgment [Doc. No. 19] filed by the Defendant, PNK, LLC, dba L'Auberge Lake Charles Casino Resort, ("PNK"). The Motion is unopposed.

For the reasons set forth herein, PNK's Motion for Summary Judgment is **GRANTED**.

**I.     BACKGROUND**

This is a slip-and-fall case arising out of an incident wherein Plaintiff Jimmy Randle ("Randle") allegedly slipped and fell in a bathroom owned by Defendant PNK. Randle filed suit in the 14th Judicial District Court, Calcasieu Parish, Louisiana, on February 25, 2021. The case was properly removed to this Court on April 13, 2021, on the basis of diversity.

On January 28, 2020, Randle, a patron at PNK, allegedly slipped and fell in a PNK restroom adjacent to the casino floor. Randle claimed that he slipped on water on the bathroom floor, which caused him to fall. Laura Duplechain ("Duplechain"), Director of Surveillance for PNK, authenticated photographs which were taken from the surveillance video.[1] The attached photographs show Randle going into the entrance of the men's bathroom on January 28, 2020, at

---

[1] [Doc. No. 19-4, Duplechain's Affidavit]

2:35:16 p.m. and turning toward the restroom at 2:35:17 p.m. Thirteen seconds later, at 2:35:30 p.m., still photographs show Randle returning to the entrance of the restroom.

Kyle Martin ("Martin") was working as a Porter for PNK on the day in question.[2] Martin's Affidavit verified that Martin was in charge of cleaning the restroom where Randle allegedly fell. Randle stated (documented by video surveillance still photographs) that he cleaned the restroom prior to Randle's fall and is shown exiting the restroom with a bag of trash at 2:30:28 p.m. Martin testified there was no water on the bathroom floor when he left.

Martin testified that when he came back to the restroom, he was told that someone had fallen. Martin went into the restroom at 2:38:01 p.m. (as documented by surveillance still photographs). Martin saw a soda that Randle had admittedly spilled but saw no water on the floor. Martin was the only PNK employee that was assigned to clean that bathroom during that morning and afternoon.

Gerald Forester ("Forester") was employed by PNK as Risk Manager on January 28, 2020. Forester examined the bathroom and prepared an Incident Report.[3] Photographs of the floor of the bathroom, taken shortly after Randle's alleged fall, were attached. The photographs showed there was only spilled soda on the floor and no water.

Forester testified that PNK's investigation has not found any person associated with PNK that caused the water to be on the floor. Randle's written statement was also attached to the incident report,[4] which stated:

> I Jimmy Randle walked in the restroom 1-28-2020 at about 2:35 p.m. water was on the floor  No sign was down I slipped and fell backwards hit head and left shoulder on corner wall walking in had a soda in my hand it went all over the place as well.

---

[2] [Doc. No. 19-6, Martin's Affidavit]
[3] [Doc. No. 19-3, pp. 5-24]
[4] [Doc. No. 19-3, p. 13]

2

    I will be going to the ER.[5]

In Randle's deposition, Randle testified that he "grabbed me a Coke, … walked in the restroom, hit the first turn. As soon as I turned… there it was."[6] Randle further stated he stepped in a puddle of water, which caused his feet to come out from under him, and the left side of his head hit the corner of the wall, causing him to lose consciousness for a minute or two.[7]

PNK moves for summary judgment on the basis that Randle has disclosed no evidence allowing a jury to conclude that PNK breached a duty to Plaintiff as required by La. R.S. 9:2800.6. Specifically, PNK asserts that Randle has no evidence that PNK caused any water to be on the floor or that PNK had actual or constructive notice of water on the floor.

The issues are briefed, and the Court is prepared to rule.

## II. APPLICABLE LAW

### A. Standard of Review

Summary judgment shall [be] grant[ed] … if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(A). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in this case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than some

---

[5] Id
[6] [Doc. No. 19-5, p. 53]
[7] [Doc. No. 19-5, pp. 55-56, 59, 65-67]

metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.

In deciding unopposed summary judgment motions, the Fifth Circuit has noted that a motion for summary judgment cannot be granted simply because there was no opposition. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 fn.3 (5th Cir. 1995). The movant has the burden to establish the absence of a genuine issue of material fact and, unless it has done so, the court may not grant the motion, irrespective of whether any response was filed. *Powell v. Delaney*, 2001 WL 1910556, at *5-6 (W.D. Tex. June 14, 2001). Nevertheless, if no response to the motion for summary judgment has been filed, the court may find as undisputed the statement of facts in the motion for summary judgment. *Id*. at 1, n.2; see also *Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003) (where no opposition is filed, the nonmovant's unsworn pleadings are not competent summary judgment evidence and movant's evidence may be accepted as undisputed). See also: *UNUM Life Ins. Co. of America v. Long*, 227 F. Supp. 2d 609 (N.D. Tex. 2002) ("Although the court may not enter a 'default' summary judgment, it may accept evidence submitted by [movant] as undisputed."); *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex.) ("A summary judgment nonmovant who does not respond to the motion is relegated to his unsworn pleadings, which do not constitute summary judgment evidence.").

The court has no obligation to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

4

**B.     Louisiana Merchant Liability Act La. R.S. 9:2800.6**

Randle's claims fall under the Louisiana Merchant Liability Act, which states:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition.  This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care.  In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
>
> C. Definitions:
>
> (1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
>
> (2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.  For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

> D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

La. R.S. 9:2800.6 applies to gaming casinos. *Neal v. Players Lake Charles, LLC,* 787 So.2d 1213 (La. App. 3d Cir. 2001); *Patin v. Evangeline Downs of Louisiana, Inc.*, 3 So. 3d 638 (La. App. 3d Cir. 2009).

The statute requires the plaintiff to prove: (1) there was a condition that presented an unreasonable risk of harm; (2) the merchant either created the condition or had actual or constructive notice of the condition; and (3) the merchant failed to exercise reasonable care. If the plaintiff fails to prove any one of those three elements, the merchant is not liable. *White v. Wal-Mart Stores, Inc.,* 699 So.2d 1081, 1084 (La. 1997).

When a plaintiff relies on constructive notice under R.S. 9:2800.6(B)(2), he must come forth with positive evidence showing that the damage-causing condition existed for some period of time and that such time was sufficient to place the merchant on notice of its existence. The statute does not allow for the inference of constructive notice absent some showing of this temporal element. *Id* at 1084.

Mere speculation or suggestion is not sufficient to meet this burden and courts will not infer constructive notice for the purposes of summary judgment where the plaintiff's allegations are no more likely than any other potential scenario. *Prudhomme v. Wal-Mart Stores, Inc.,* 2019 WL 81611 (W.D. La. 1/2/2019).

**III.   ANALYSIS**

Randle relies upon constructive notice in this case, yet Randle has submitted no evidence that PNK either created or had actual or constructive notice of the alleged spill. Because Randle is unable to prove PNK created or had actual or constructive notice of the alleged spill, his claim against PNK fails.

## IV.    CONCLUSION

For the reasons set forth herein,

PNK's Motion for Summary Judgment [Doc. No. 19] is **GRANTED**.

Monroe, Louisiana, this 7th day of March 2023.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**